IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALDINE PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 8261 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MIDLAND FEDERAL SAVINGS AND LOAN | ) | |
| ASSOCIATION; MIDLAND CAPITAL | ) | |
| HOLDINGS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Geraldine Page has brought a six count first amended complaint alleging that defendants Midland Federal Savings and Loan Association and its holding company, Midland Capital Holdings Corporation, (jointly as "defendant") refused to offer her a mortgage loan because of her race, disability, gender and/or "public assistance status." Counts I and II allege race discrimination in violation of 42 U.S.C. §§ 1981 and 1982. Count III alleges a violation of the Fair Housing Act (the "Act"), 42 U.S.C. § 3605, based on plaintiff's race, color, sex and status as "handicapped." Count IV alleges a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, based on plaintiff's race, color, sex and public assistance status. Count V alleges a violation of Title III of the Americans with Disabilities Act ("ADA"). Count VI alleges that defendant's failure to offer plaintiff a mortgage constitutes a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 et seq. Defendant has moved to dismiss the amended complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons described below, defendant's motion is granted in part and denied in part.

# FACTS[1]

Plaintiff is an African-American single mother with an unspecified disability who, in 2012, sought funding to purchase a home. At that time plaintiff was a participant in the "Section 8 Home Ownership Program" and Housing Choice Voucher Home Ownership Program ("HCVHP") administered by the Housing Authority of Cook County ("HACC"). According to the amended complaint, this program permits conversion of Section 8 Housing Choice Rental Vouchers to subsidize home ownership for eligible participants who utilize the subsidy to help make mortgage payments. See 24 C.F.R. § 982.625.

As a program participant, plaintiff was eligible for a federal housing subsidy or Housing Assistance Payment ("HAP") in the amount of 70.75% of her monthly mortgage payment upon her purchase of a home. Under plaintiff's particular approval the total monthly mortgage amount (the total of the subsidized share plus plaintiff's required payment) could total up to $1,666.00. In addition, because plaintiff qualified as a "disabled person" the subsidy would continue for the entire term of a 30 year mortgage or loan. The HAP is paid directly to the lender. According to plaintiff's description, the program guidelines contemplate that the subsidy would be used with a Federal Housing Administration ("FHA") insured mortgage loan, which required a reduced (3% of purchase price) down payment. Plaintiff was also eligible for the Down Payment Plus Program ("DPP") administered by the Illinois League of Financial Institutions. The DPP assists low and moderate-income persons with grants of up to $5,000 to be used to cover down

---

[1]The facts are taken from plaintiff's amended complaint and are assumed to be true for purposes of the motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

payment, closing costs, and/or home repairs. Plaintiff alleges that this equates to an FHA insured mortgage loan.

Defendant is a federally insured Savings and Loan Institution that offers mortgage loans for purchasing and refinancing homes. Plaintiff alleges, on information and belief, that defendant offers FHA-insured purchase money mortgages, "directly and/or through bank-affiliated brokers."

In January 2012 plaintiff had completed all HCVHP requirements, including home ownership and credit counseling requirements and received a "Certificate of Participation" from HACC. She had approximately six months to locate a home to purchase before losing the subsidy. She found a home by July 9, 2012, and began contacting banks, but learned that most banks do not participate in the HCVHP. Because plaintiff needed down payment assistance, she needed to find a lender that participated in both DPP and the home ownership program.

According to the amended complaint, only two banks in plaintiff's geographic area offered down payment assistance, defendant and Seaway Bank and Trust Company ("Seaway"). On July 9, 2012, she called defendant and spoke with Senior Loan Officer Terry Johnson. Plaintiff asked Johnson if defendant made "FHA" loans and if it participated in DPP. Johnson answered yes to both questions. Plaintiff then explained that she participated in the HVACC home ownership program, how it worked, that she was seeking a loan, and asked if defendant would be willing to participate in the program. She alleges that she "made it clear" that the program would provide a 30 year subsidy of her mortgage payment and that she had documentation on how the program worked. Johnson asked plaintiff where she worked. Plaintiff said that she did not work. He then asked her source of income, to which she responded

3

that she "received disability income." According to the complaint, there was a long pause and then Johnson stated that he would have to check with his manager to see if the bank was willing to participate in the home ownership program. He told plaintiff that he would call her back.

Johnson called plaintiff that same day and told her, "[U]nfortunately, the bank is unable to participate in the home ownership program because it does not make FHA loans." Plaintiff responded "okay" and ended the call.

That same afternoon, plaintiff called Katie Reeves of the Home Ownership Coalition for People with Disabilities. With plaintiff on the line, Reeves initiated a three-way call to Johnson. Johnson told Reeves and plaintiff that the bank could not participate in the HACC program because it does not make FHA loans, meaning plaintiff would need a 20% down payment. Reeves documented the conversation and provided that documentation to plaintiff.

One week later, plaintiff went to Seaway and met with Pat Guisinger, a retail loan officer. Plaintiff told Guisinger that she was a participant in the HACC program and was seeking a home purchase loan. She asked Guisinger if Seaway participated in the DPP program, if the bank made FHA loans, and if it would be willing to participate in the home ownership program. Guisinger responded that Seaway did not offer FHA loans but did offer conventional loans with a 1% down payment and an interest rate fixed for the first five years. She told plaintiff that Seaway did participate in DPP but was currently out of DPP funds. Guisinger indicated that she would check with her manager to see if the bank would participate in the home ownership program. Guisinger ultimately called plaintiff a week later to tell her that the bank could not participate in that program. While plaintiff was in Guisinger's office, plaintiff asked her to call defendant to see if defendant still had DPP funds available and if defendant made FHA loans.

4

Guisinger called, was transferred to Johnson, who told her that the defendant bank makes FHA loans through a broker. Johnson had never told plaintiff that defendant "made FHA loans through a broker."

On July 23, 2012, plaintiff sent Johnson a certified letter requesting that he state in writing why he discouraged plaintiff from making a loan application to the bank. On July 30, plaintiff received her original letter back with Johnson's business card stapled to it and "call me" handwritten on the bottom of the letter. Plaintiff called Johnson and asked if he would reconsider his position on FHA loans. He told her "I cannot," but did mention defendant's "ability to make FHA loans through a broker."

That same day plaintiff started filing discrimination complaints with: the Illinois Department of Financial and Professional Regulation ("IDFPR"), which forwarded the complaint to the Comptroller of the Currency, the Illinois Department of Human Rights, and the U.S. Department of Housing and Urban Development ("HUD").

On August 20, 2012, plaintiff received a voice message from Rich Taylor, a Vice-President of defendant. The message asked plaintiff to call him regarding an application for a mortgage loan. Taylor called plaintiff again the following day. On August 30, plaintiff received a letter from Taylor stating that defendant "is not an approved FHA lender," that it "acts as a broker for FHA loans through FHA-approved correspondent lenders," and that plaintiff had a "misunderstanding" of what Johnson told her. The letter indicated that Johnson had invited plaintiff to "make an appointment to complete a loan application for submission to our FHA correspondent lender." According to plaintiff, Johnson made no such offer.

**DISCUSSION**

Defendant has moved to dismiss all counts of the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. That motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true the well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," Id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, the allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility about the "speculative level." Twombly, 550 U.S. at 555; see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (Twombly's pleading principles apply in all civil actions).

This standard demands that a complaint allege more than "legal conclusions or threadbare recitals of the elements of the cause of action, supported by mere conclusory statements. Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662.

Defendant argues that plaintiff's complaint fails in its entirety under this standard. According to defendant, the complaint, despite its length (29 pages, 129 paragraphs), fails to plead facts to plausibly suggest that she is entitled to any relief. Defendant is correct that plaintiff's lengthy complaint is hardly the "short plain statement" of her claim required by Fed. R. Civ. P. 8, and that it casts "as wide a net as possible" by alleging race, gender, disability and

6

socioeconomic status discrimination.  The court disagrees with defendant's argument, however, that the complaint fails to provide factual details sufficient to put defendant on notice of plaintiff's claims.

Whether the factual detail provided is sufficient to plausibly suggest that plaintiff is entitled to relief is another matter.  As defendant notes, all of plaintiff's racial discrimination claims are based on the allegation that "on information and belief, Johnson could tell from the sound of plaintiff's voice not only that she was female but that she was African-American." There is nothing inherently improper about pleading on "information and belief"; even fraud claims subject to the particularity requirements of Fed. R. Civ. P. 9(b) can be so pled provided the specific facts that support the information and belief are provided.  See Bankers Trust Co. v. Old Republic Insurance Co., 959 F.2d 677, 684 (7th Cir. 1992).  Plaintiff pleads that Johnson could tell her race from the sound of her voice.  There is nothing implausible about that allegation.

Defendant also argues that plaintiff's entire complaint is based on the allegation that "[defendant] offers . . ., on information and belief, FHA-insured purchased money mortgages, which it offers directly and/or through bank-affiliated brokers."  The sole basis for this allegation is a further allegation that "a search of mortgage lenders on the internet also indicates that Midland is an FHA lender."  According to defendant, however, a simple Google search shows that the official HUD website has a publicly available "HUD FHA Lender List" that does not list defendant as an approved FHA lender.  Defendant argues that the court can and should take judicial notice of the information on this website, see Laborers' Pension Fund v. Blackmore Sewer Const., Inc., 298 F.3d 600, 607 (7th Cir. 2000), and then conclude that plaintiff's

7

allegations that defendant refused to give her a loan based on discrimination are not plausibly pled because it had no authority to make such a loan.

Even if defendant is correct, plaintiff has pled more than that defendant refused to provide a loan which, according to defendant, it does not and cannot provide to anyone. Plaintiff alleges, and defendant does not dispute, that defendant brokers FHA loans by taking applications for other correspondent lenders. Plaintiff alleges that after defendant learned her race, disability, and/or socioeconomic status, it refused even to offer her the opportunity to fill out an application. Although not overly detailed, these allegations are sufficient to support plaintiff's discrimination claims.

Defendant also argues that plaintiff's ECOA claim in Count IV fails to state a claim because plaintiff never submitted an application. Citing Dumas v. Sentinel Mortgage Corp., 2003 WL 22859807, *3 (N.D. Ill. 2003), which held that "to establish a claim under the Equal Credit Opportunity Act, plaintiff must have actually submitted a completed application as defined by 12 C.F.R. § 202.2," defendant argues that by pleading that she never went to defendant and even attempted to complete an application, plaintiff has pled herself out of a claim.

As plaintiff correctly counters, however, the ECOA applies to all stages of a credit transaction, including the pre-application stage. Reg. B, 12 C.F.R. § 202.4(b), entitled "Discouragement" provides:

> A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibitive basis a reasonable person from making or pursuing an application.

Thus, plaintiff is correct that if Johnson discouraged her from applying for a loan either with or through defendant because of her race and/or any other prohibitive basis, the complaint states a claim. Accordingly, the motion to dismiss Count IV is denied.

Next, defendant argues that Count V, alleging a violation of the ADA, fails to state a claim because it fails to allege a causal link between the challenged action and plaintiff's alleged disability. Title III of the ADA prohibits discrimination on the basis of disability in the full enjoyment of "goods, services, facilities, or privileges." 42 U.S.C. § 12182(a). Credit is a service under this provision, Gaona v. Town & Country Credit, 324 F.3d 1050 (8th Cir. 2003).

To state a claim under Title III, plaintiff must plead sufficient facts to show: (1) she has a disability; (2) defendant is a private entity that owns a place of public accommodation; and (3) defendant's eligibility requirements screen plaintiff out on the basis of disability and were not necessary for the provision of the service. 42 U.S.C. § 12182(b)(2)(A)(I); Ganden v. National Collegiate Athletic Association, 1996 WL 680000 (N.D. Ill. 1996). The amended complaint pleads all of these elements in sufficient detail.[2] Accordingly, defendant's motion to dismiss Count V is denied.

Finally, defendant argues that Count VI, alleging a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), fails to allege a deceptive practice. To state a claim under the ICFA, plaintiff must allege: (1) a deceptive act or practice by defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of

---

[2]The complaint alleges that plaintiff told Johnson she received disability income. She does not allege that Johnson was aware of her particular disability, or even what her disability is. Plaintiff will be required to establish that she has a disability, as broadly defined by the ADA (42 U.S.C. § 1210), in order to establish her claim in Count V.

9

conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately cause by the deception." Stella v. LVMH Perfumes and Cosmetics, U.S.A., Inc., 564 F. Supp.2d 833, 835-36 (N.D. Ill. 2008). The Act prohibits both unfair and deceptive practices. Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 417 (2002).

The instant complaint alleges that Johnson, after learning of plaintiff's race and disability status, steered her away from applying for a loan. Such a practice, if true, would offend public policy and would be immoral and could cause substantial injury, thus stating an unfair practice claim. See Perez v. CitiCorp Mortgage, Inc., 301 Ill.App.3d 413, 421 (1st Dist. 1991). Defendant has not challenged Count VI with respect to an unfair practice claim and thus the motion to dismiss is denied in that respect.

The court agrees with defendant, however, that Count VI fails to state a claim for deceptive practices. The alleged deceptive practice was asking screening questions that were inappropriate. Those questions, which asked where plaintiff worked and her source of income, are neither unfair nor deceptive and are specifically authorized under the ECOA as non-discriminatory. 15 U.S.C. § 1691(b)(2). Accordingly, defendant's motion to dismiss Count VI as it pertains to a claim of deceptive practice is granted.

## **CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss is denied as to Counts I through V and as to a claim of unfair practice in Count VI. The motion is granted as to a claim of a deceptive practice in Count VI. The court notes that defendant's motion to dismiss identifies many potential weaknesses in plaintiff's case – weaknesses that will be addressed during discovery, on summary judgment or trial. At the pleading stage, however, the complaint

must be answered on or before October 4, 2013. The parties are directed to submit a joint status report using this court's form on or before October 10, 2013. This matter is set for a status hearing on October 16, 2013, at 9:00 a.m.


**ENTER:** **September 13, 2013**

                                                                                   _____
                                                                                   **Robert W. Gettleman**
                                                                                    **United States District Judge**